[No. 20735.    Department Two.    November 28, 1927.]

BERNARD HIRST, *Respondent,* v. STANDARD OIL COMPANY
OF CALIFORNIA, *Appellant.*[1]

[1] MUNICIPAL CORPORATIONS (379, 389)—USE OF STREETS—MUTUAL
RIGHTS AT CROSSINGS—NEGLIGENCE—EVIDENCE—SUFFICIENCY. The
negligence of the driver of an automobile, running into the
rear of another at a street intersection, is a question for the
jury, where there was evidence that he was traveling over the
center of the street, at high speed, as the impact corroborated,
his only excuse for failing to swerve to the left being that he
did not see the other car, a large sedan, that had slowed down
for the crossing and had passed the center of, and must have
first entered, the intersection.

[2] SAME (379, 383, 390)—MUTUAL RIGHTS AT CROSSINGS—CONTRIB-
UTORY NEGLIGENCE—QUESTION FOR JURY. It cannot be said, as
a matter of law, that one, simultaneously approaching an inter-
section from the left, is guilty of contributory negligence in
not giving way to the car on the right, which struck the rear
of his car after he had passed the center of the intersection,
when there was evidence that he first reached the intersection
and therefore had the right of way.

[3] SAME (379, 380, 390)—MUTUAL RIGHTS AT CROSSINGS—EXCEEDING
SPEED LIMIT—QUESTION FOR JURY. In such a case, he was not
guilty of contributory negligence, as a matter of law, by reason
of exceeding the speed limit at the crossing, where it is not
shown that his speed contributed as a proximate cause of the
accident, and he had slowed down for the crossing so that his
speed at the time of the accident was unknown.

[4] SAME (379, 392)—MUTUAL RIGHTS AT CROSSINGS—INSTRUCTIONS.
Upon a collision of autos at a street intersection, it is not error
to instruct to the effect that the car reaching the intersection
"an appreciable time" ahead had the right of way, and it was
the duty of the other to give way to it.

[5] DAMAGES (48, 126)—IMPAIRMENT OF EARNING CAPACITY—INSTRUC-
TIONS. In a personal injury case, evidence of loss of earning
capacity, however inconclusive it may be, authorizes an instruc-
tion allowing damages therefor.

[6] SAME (86, 87)—EXCESSIVE DAMAGES—LOSS OF ARM—IMPAIR-
MENT OF EARNING CAPACITY. A verdict for $11,180, for the loss
of a left arm will not be held excessive, where plaintiff ex-

[1]Reported in 261 Pac. 405.

pended $1,180.40 for treatment, his arm was so crushed that it had to be amputated a few inches below the elbow, and it prevented him from pursuing his principal occupation, and hampered him in others.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 27, 1927, upon the verdict of a jury, rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Roberts & Skeel* and *Battle, Hulbert & Helsell,* for appellant.

*Hadley, Hay & Hadley, J. Speed Smith,* and *Henry Elliott, Jr.,* for respondent.

FULLERTON, J.—In this action, the respondent, Hirst, recovered against the appellant, Standard Oil Company of California, for personal injuries received in an automobile collision. The collision causing the injuries occurred at the intersection of Second avenue and Cedar street, in the city of Seattle, each being a public street of that city. The streets intersect at a right angle. Second avenue extends north and south, and Cedar street east and west from the place of the collision. Double street car tracks extend along both streets. As the intersection was approached, the respondent was driving south on Second avenue, and the appellant east on Cedar street; the appellant's automobile was therefore on the right of that of the respondent. The respondent's automobile was a Lincoln sedan, weighing approximately forty-six hundred pounds, and the appellant's a Ford roadster, weighing approximately fifteen hundred and fifty pounds. The automobiles collided in the intersection, and as a result of the impact both were turned over.

The evidence leading up to the collision, which the jury were entitled to believe, tended to show the following facts: As the respondent was approaching the

intersection, he was driving on the right side of the street about ten feet from the curb line, traveling some twenty-two miles per hour. When about forty feet from the intersection, he saw a truck approaching from the west on the east side of Cedar street, then about an equal distance from the intersection. He applied his brakes and slowed his car down, intending to let the truck cross ahead of him. The driver of the truck also slowed down and stopped at the edge of the intersection, inviting the respondent to pass over in front of him. The respondent then released his brakes and started over the intersection. The back wheels of his automobile had reached the center of the most southerly of the double car tracks, when the appellant's car crashed into his car, striking it near the right back wheel.

There is nothing in the record showing the speed of the respondent's automobile at the time of the impact, further than can be inferred from the fact that it was traveling some twenty-two miles per hour when it was forty feet from the intersection, and was slowed down from that point for the purpose of letting the truck mentioned pass in its front. The appellant's automobile, according to the testimony of its driver, was traveling between ten and fifteen miles per hour. The testimony on the part of the respondent justified the jury in finding that it was traveling at a much higher speed. Some of his witnesses estimated it at thirty miles per hour, and the effect of the force of the impact of the machines lends an inference that the speed was much greater than the driver estimated.

The respondent testified that he drove directly across the intersection well to the right of the center of the street, and in this he is corroborated by certain of his witnesses. The appellant's automobile was driven with its wheels astride the street car rail

farthest to the right. It passed the truck that was stopped at the entrance to the intersection to its left, and was driven into the intersection without any slackening of its speed. The driver of neither car saw the other car until after the collision.

[1] The appellant contends that there is no evidence of negligence on the part of the driver of its automobile. But from the mere statement of the case, it would seem that the court could hardly so declare as a matter of law. A Lincoln sedan, weighing approximately forty-six hundred pounds, is an object of considerable size. It was directly in the front of the driver of the appellant's automobile when he reached the intersection. He had but to swerve only slightly to the left to pass it in the clear. There was no other traffic in the street which prevented him from so doing. His only excuse is that he did not see the sedan. Clearly, we think, the question of his negligence was for the jury.

[2] The appellant argues, with greater force, that the respondent was guilty of negligence contributing to the accident, but we think the trial court correctly left this question to the jury also. It is said that the automobiles were simultaneously approaching a given point, and that it was thus the duty of respondent to give way to the appellant, since it was approaching on the right. But, if the evidence on the part of the respondent is to be believed—and the jury had the right to believe it—the respondent was well into the intersection before the appellant reached it. This, under the rule as we have heretofore announced it, gave him the right of precedence, and made it the duty of the appellant to give way to him. *Jahn & Co. v. Paynter,* 99 Wash. 614, 170 Pac. 132; *Sinclair v. Wiles & Foy,* 116 Wash. 409, 199 Pac. 725; *Groeschell v. Washington Chocolate Co.,* 128 Wash. 589, 224 Pac. 19; *Hoyt v. Wilson,* 132 Wash. 423, 231 Pac. 947.

The right accorded by the rule is, of course, not absolute in all cases. A driver of an automobile has not the right to proceed across an intersection, merely because he may reach it first, when to do so he has reason to anticipate that his act will result in a collision. It is his duty to exercise reasonable care in the exercise of the right. In this instance, however, it is our view of the evidence that, since the respondent violated no positive mandate of the law, it was a question for the jury whether he exercised reasonable care.

[3] But it is said that the respondent proceeded across the intersection at a speed in excess of that permitted by the law, and cannot recover for his injury because to do so is negligence *per se*. It is true that this court has said that a violation of a positive statute is negligence of itself, but we have not said that such a violation by the party seeking relief will bar a recovery. The negligence must contribute to the injury, and it is difficult to see how the speed the respondent was driving in any way contributed to his injury. But passing this, we cannot concede that the evidence conclusively shows that respondent was at the time of the collision exceeding the speed limit. The evidence on the question we have hereinbefore noticed. While it shows that until he reached a distance approximately forty feet from the intersection, he was traveling faster than the law permitted him to travel while crossing the intersection, it also shows that he began to slow down at that place, preparatory to stopping to let the truck before mentioned pass in his front. To what speed he slowed down the evidence does not show, but the law will presume, in the absence of direct proof to the contrary, that he slowed down to the legal limit, rather than presume that he did not do so. Whether, therefore, the respondent was negligent in this regard

was a question for the jury, and the trial court properly submitted it to them.

[4] As error thought to require a new trial, complaint is made of the following instruction given to the jury:

"The state law provides that drivers when approaching street intersections shall look out for and give the right of way to vehicles on their right simultaneously approaching a given point, but it is also the law that a car, whether on the right or left, that reaches an intersection an appreciable time ahead of another car, has the right of way.

"I, therefore, instruct you that, if you find from the evidence in this case that the plaintiff's automobile reached the intersection of Second Avenue and Cedar Street an appreciable time ahead of the defendant's car, the plaintiff's car had the right of way, and it was the duty of the driver of the defendant's car to so drive said car as to accord the plaintiff the right of way; and if you further find that the failure of the defendant to accord the plaintiff such right of way was the proximate cause of the collision herein and resulting injuries, if any, to the plaintiff, your verdict should be for the plaintiff.

"On the other hand, if you find from the evidence in this case that the said cars were simultaneously approaching a given point, it was the duty of the driver of the car on the left to so drive his car as to accord to the defendant's car the right of way. And if you further find that his failure to accord the defendant's car such right of way caused or contributed to causing the collision herein, then your verdict should be for the defendant."

The objection is to the phrase "appreciable time," but we cannot conceive that its use in the connection shown could in any way mislead the jury. The rule is that the one which first enters the intersection has the right of way, and to say that the one must precede the other by an appreciable time is rather to extend

than to narrow the rule. We have, moreover, ourselves used the expression in connection with a similar situation without thought that it could be misleading. *Hull v. Crescent Manufacturing Co.*, 109 Wash. 129, 186 Pac. 322.

[5] The court instructed the jury that, in determining the amount of the respondent's recovery, they could take into consideration the loss of his earning capacity which he had suffered because of his injury. It is objected to this that there was no evidence showing any such loss. But we find such evidence in the record. However inconclusive it may have been, the jury were entitled to consider it, and they doubtless appraised it at its true worth.

Errors are assigned on the refusal of the court to give certain requested instructions. These we shall not notice in detail. Much of the matter contained in the requests was embodied in the instructions given, and an examination of the charge as a whole convinces us that the jury were fully informed as to all of the material issues.

[6] Finally, it is objected that the verdict is excessive. The verdict was for the sum of $11,180.40, and judgment was entered thereon for that sum. As the automobile of the respondent turned over, his left arm was caught between some part of the machine and the pavement of the street and so crushed and mangled as to necessitate its amputation some few inches below the elbow. In the care and cure of the injury, his testimony tended to show that he had expended the sum of $1,180.40, and further tended to show that it prevented him from pursuing the principal occupation which he pursued for a livelihood, and hampered and interfered with his pursuit of others in which he sometimes engaged; and he, of course, endured the usual suffering that follows such an ac-

cident. It may be that we, were we sitting as jurors, would have returned a lesser verdict, but the majority of the court think that there is here no legal cause to justify our interference.

The judgment is affirmed.

MACKINTOSH, C. J., MAIN, ASKREN, and HOLCOMB, JJ., concur.