[No. 34833.    Department One.    September 24, 1959.]

WILMER O. BROWN, *Respondent,* v. COCA-COLA
BOTTLING, INC., *Appellant*[1]

[1]Reported in 344 P. (2d) 207.

*Clarke, Clarke, Albertson & Bovingdon,* for appellant.

*Heckendorn & McNair,* for respondent.

DONWORTH, J.—Defendant appeals from a judgment entered upon a jury verdict in favor of plaintiff. The nature of the action is fairly summarized in the trial court's instruction No. 1 to the jury, as follows:

"This is an action to recover damages alleged to have been sustained by the plaintiff Wilmer O. Brown as the result of drinking part of the contents of a bottle of a soft drink called Coca-Cola, bottled by the defendant corporation.

"The Coca-Cola was consumed on June 6, 1957. Plaintiff alleges that this bottle of Coca-Cola contained broken glass and that plaintiff swallowed some of the glass before noticing the broken glass in the bottle.

"Plaintiff alleges that he was unable to return to work for some time thereafter because of being made ill as a result of drinking from this bottle containing glass particles, and that he has suffered great pain and nervous shock and has necessarily incurred medical expenses for treatment of his condition. Plaintiff further alleges that he has been damaged by reason of this illness and impairment of his health in the sum of $10,000.

"The defendant admits that it engages in manufacturing, bottling and distribution of a soft drink beverage known as Coca-Cola. The defendant further admits that it delivered to a cafeteria at C. B. Van Vorst & Company in Seattle, King County, Washington, bottles of Coca-Cola to be sold to the general public and that said bottles of Coca-Cola were inserted in a vending machine located on said premises. Defendant admits further that the contents of the bottles were warranted to plaintiff to be fit for human

consumption. Defendant denies the claims of the plaintiff as set forth above."

The jury found in favor of plaintiff in the sum of $1,214. Defendant's motion for a new trial was denied and the court entered judgment upon the verdict, from which defendant appeals.

Appellant assigns as error the denial of its motion for new trial, the admission and exclusion of certain evidence, the giving of instruction No. 1 (quoted above), and the court's refusal to give two requested instructions.

We shall first consider appellant's assignment of error No. 1, which concerns the action of the trial court in permitting respondent to give the following testimony on direct examination:

"Q. What did Dr. Evans state at the end of his examination, if anything, as to his diagnosis of your condition? A. He told me that I had spasm of the stomach and inflamed intestines. Q. Did he say anything he might have to do or what the treatment would be for such a condition? . . . [Objection that question was leading overruled.] A. He told me if my stomach, it got worse, didn't get better, they would have to operate and take everything out and go through everything to be sure there was no glass. . . . Q. Did this statement you related Dr. Evans made to you, did it have any effect — any effect upon you in any way? . . . [Objection as hearsay overruled.] A. Shall I answer? Q. Yes. A. I couldn't see being cut open. Q. You couldn't see it? What do you mean by you couldn't see it? Did you think anything about it? I want you to tell what effect, if any, this had upon you. A. Well, let's put it this way: I would be afraid to be cut open."

The above-quoted testimony was objected to by appellant as being hearsay and was admitted only after extensive argument had been previously made to the court in the absence of the jury.

■ Clearly, the testimony of which appellant complains is not within the ban of the hearsay evidence rule. The words of Dr. Evans were not offered to prove their truth or falsity (*i.e.*, as to whether respondent would have to undergo a major operation), but merely to establish the state of mind of respondent Brown which resulted from

the doctor's statement to him. As such, respondent's testimony came within a well-recognized exception to the hearsay rule. *Olson v. Seldovia Salmon Co.*, 88 Wash. 225, 152 Pac. 1033 (1915); *Schmitz v. Mathews*, 141 Wash. 278, 251 Pac. 571 (1926); *Nelson v. Bjelland*, 1 Wn. (2d) 268, 95 P. (2d) 784, 125 A. L. R. 641 (1939); *Moen v. Chestnut*, 9 Wn. (2d) 93, 113 P. (2d) 1030 (1941); *Palin v. General Constr. Co.*, 47 Wn. (2d) 246, 287 P. (2d) 325 (1955). The value of this evidence did not hinge upon the credibility of Dr. Evans, but rather upon that of respondent, who was testifying on the stand and was subject to cross-examination.

In arguing to the trial court for the admissibility of this testimony, respondent's counsel stated, as part of his offer of proof:

" . . . Now Mr. Bovingdon's objection is well taken as a pure matter of hearsay, but I am offering to prove by Mr. Brown's testimony that were he allowed to testify, that he would testify that Dr. Evans told him that if his condition did not get better he would—that if it did not get better and got worse he would have to cut him open and make a major operation on this man, and as a direct result of this fear and anxiety that was put into Mr. Brown's mind by the statement of Dr. Evans, it filled him with a condition of anxiety that caused him a great deal more sickness than he would have had before. *I am not offering this for the truth of the matter. I am not offering it to show he would have had to be cut open, but I think I am entitled to show the state of mind created by this hearsay testimony.*" (Italics ours.)

The following quotation from *Ferrara v. Galluchio*, 5 N. Y. (2d) 16, 152 N. E. (2d) 249 (1958), is precisely in point:

"The plaintiff's statement that the dermatologist told her she should have the shoulder checked every six months because there was a possibility that cancer might develop was not adduced to establish the fact that the site of the burn might become cancerous. As her attorney said at the trial, 'we are not making any claim that this person is going to sustain a cancer. We are going on a neurosis.' Since the statement of the dermatologist was introduced not for the purpose of proving that plaintiff would develop cancer but merely for the purpose of establishing that there

was a basis for her mental anxiety, such testimony was not objectionable hearsay (see People v. Jung Hing, 212 N. Y. 393, 406, 106 N. E. 105, 109; People v. Hines, 284, N.Y. 93, 110, 29 N. E. 2d 483, 491; 6 Wigmore on Evidence [3d ed.], § 1766). Nor do we believe that it was improper for the trial court to permit the jury to consider such testimony in determining the amount of the recovery against the defendants."

■ If appellant's counsel wished to have the jury's consideration of this testimony specifically limited to the purpose for which it was offered, it was his duty to request the court to instruct the jury accordingly. We so held in *Olson v. Seldovia Salmon Co., supra,* which was an action by an employee against an employer for personal injuries sustained in Alaska because of the alleged negligence of the employer in maintaining dangerously defective machinery. The following portion of the opinion in that case is applicable here:

"Counsel for appellant contend that the trial court erred in admitting, over their objection, certain testimony showing actual knowledge on the part of appellant's superintendent of the existence of the projecting shaft and the key thereon. With a view of so showing, and with the statement on the part of respondent's counsel that it was 'simply to show knowledge,' a witness for respondent was asked and answered as follows:

" 'Q. Were you ever at this particular place where this set screw was and this elbow of the key? A. Yes, I remember one occasion where three of us were together there. Q. Now that was before Louie was hurt? A. Yes, sir. Q. How long before? A. It must have been about three weeks. Q. Now what did you, at that time hear Mr. Southworth say to Mr. Whorf, the general manager? Q. What did he say with reference to the set screw? A. He passed the remark that it is rather dangerous to have it uncovered. Q. To have what? A. To have that one *running uncovered*— without any covering on it. Q. And called his attention to these particular two things which you mention here? A. To the key and the set screw.'

"It is now argued that the admission of this evidence, over the objection of counsel for appellant, was hearsay, and was erroneous and prejudicial as such. In view of the fact that it was introduced, not for the purpose of showing

that the projecting shaft and key were as claimed by respondent and were dangerous, but for the purpose of showing that appellant's superintendent had knowledge of the condition of the shaft and key, we think the evidence was not hearsay. In *Smith v. Whittier,* 95 Cal. 279, 30 Pac. 529, disposing of a similar contention, Justice Harrison, speaking for the court, observed:

" 'If the fact sought to be established is, that certain words were spoken, without reference to the truth or falsity of the words, as, for instance, that a certain statement was made by a party to the action as an admission of a fact, or was made to him as a notice, or under such circumstances as to require action or reply from him, the testimony of any person who heard the statement is original evidence, and not hearsay. (Wharton on Evidence, § 254; Greenleaf on Evidence, § 100; *People v. McCrea,* 32 Cal. 98; *People v. Estrado,* 49 Cal. 171). Such evidence is admitted for the purpose of establishing merely the utterance of the words, and not their truth, but the admission in evidence of the words spoken is not to be used in determining the issue of their truth. Necessarily, the words so spoken are brought before the jury, but the jury can readily be instructed by the court that they are not to regard them as proof of the facts that are stated.'

"See, also, 1 Wigmore, Evidence, §§ 245-252.

"*If counsel for appellant desired to have this testimony confined more definitely to the question of the superintendent's knowledge of the condition there existing, and avoid having the possible effect of it being hearsay evidence upon the question of the existence of such condition, they had opportunity to request the court to instruct the jury accordingly.* There is nothing in this record to indicate that any such request was made, nor even that the court did not so instruct the jury, the instructions of the court to the jury not being before us in this record. We conclude that no prejudicial error is shown in the admission of this evidence." (Italics ours.)

See, also, *Adkins v. Brett,* 184 Cal. 252, 193 Pac. 251 (1920).

Appellant next contends that the trial court erred in excluding exhibit 6, a written report made by Dr. Evans to one of respondent's attorneys concerning the doctor's physical examination of respondent. Appellant offered this report, during the course of his cross-examination of re-

spondent, for the purpose of contradicting respondent's hearsay testimony (set out above) on his direct examination. The trial court rejected the offer on the ground that it was hearsay.

We find no error here for two reasons: (1) After respondent had testified, in effect, that Dr. Evans told him that an operation might become necessary unless he showed improvement, the only issue presented was whether Dr. Evans had made such a statement to respondent or not. In order to contradict respondent, appellant would have to offer a denial by Dr. Evans that he ever made such a statement to respondent. This would necessarily involve the credibility of Dr. Evans, and any such statement would have to be offered for the truth of the fact asserted (*i.e.*, that Dr. Evans had never made such a statement to respondent). Since the statements contained in Dr. Evans' report (exhibit 6) were made out of court when the doctor was not under oath or subject to cross-examination, they were properly excluded as hearsay. (2) We find nothing in exhibit 6 which in fact contradicts respondent's testimony as to what he had testified that Dr. Evans had told him.

Finally, appellant assigns error to the giving of instruction No. 1 (quoted above), and to the trial court's refusal to give appellant's requested instructions No. 2 and No. 3. Appellant's position here is that the trial court's instruction No. 1 included respondent's allegation that he swallowed some of the glass alleged to have been in the bottle of Coca-Cola from which he drank, and that this constituted error because there was no evidence to substantiate respondent's assertion of swallowing any glass.

We think that the physical evidence in this case tended to prove that respondent swallowed some of the glass. Exhibits 7 and 8 show that some of the glass particles removed from the Coca-Cola bottle were almost infinitesimal. This evidence, coupled with the undisputed testimony that respondent had thoroughly shaken up the contents of the bottle just prior to drinking from it, is certainly sufficient to present a question of fact for the jury as to whether respondent had actually swallowed some glass or not.

Finding no merit in appellant's assignments of error, it follows that the trial court did not err in denying appellant's motion for a new trial and its judgment must be, and hereby is, affirmed.

WEAVER, C. J., ROSELLINI, OTT, and HUNTER, JJ., concur.