[No. 36148.    Department One.    May 10, 1962.]

GERALD D. KELLEY, *Respondent*, v. GREAT NORTHERN
RAILWAY COMPANY, *Appellant*.*

*Reported in 371 P. (2d) 528.

*R. Paul Tjossem, Woodrow L. Taylor,* and *Thomas J. Wetzel,* for appellant.

*Miracle, Treadwell & Pruzan,* for respondent.

HILL, J.—This is an action under the Federal Employers' Liability Act.[1] From a judgment for the plaintiff, on a jury verdict for $24,636, the Great Northern Railway Company (hereinafter referred to as the railroad) appeals.

There is no contention that the evidence does not support a finding of liability against the railroad, but a new trial is sought, the appellant railroad urging excessive damages and various trial errors.

Gerald D. Kelley (hereinafter referred to as the plaintiff),[2] then an eighteen-year-old boy, went to work in the railroad's shops in November, 1958. He developed contact dermatitis, probably from a rust inhibitor known as Nalco 38, which contains chromium and which was used in taking care of the railroad's diesel locomotives. The railroad being unable to utilize his services in other departments, plaintiff left its employ in November, 1959.

He did not again become regularly employed until May, 1960, and since then he has been working for a hardware company. His rate of pay with the railroad was $2.02 an hour; with the hardware company he was receiving $1.76 an hour (at the time of the trial).

The railroad devotes the major portion of its brief to its claim of excessive damages and asks either for a new trial, or a reduction in the amount.

It is assumed, probably correctly, that the major element of damages, as found by the jury, was the plaintiff's reduced earning capacity.

The plaintiff's argument, on that point, was that the difference between the rate of pay at the railroad and at the hardware store was 35 cents an hour; for an 8-hour day that was $2.80; for a 22-day month $61.60; for a 12-

[1] Title 45 U.S.C.A., § 51 *et seq.*

[2] The action is brought by his father, James F. Kelley, as guardian *ad litem.*

month year $739.20; and for 45 years (from age 20 to age 65) a total of $33,264.[3]

The railroad, in its reply brief, points out a substantial inaccuracy in that the difference in pay was only 26 cents an hour ($2.02 — $1.76 = .26); and that, on the same basis of computation over a 45-year period, the total is $24,710.40.[3]

▮ Instead of this being an argument to reduce the verdict by $8,000, as counsel for the railroad suggest, it seems to us that the fact that the computation of $24,710.40 proximates the $24,636 verdict would prove (if this were the only element of damage) that the jury and, ultimately, the railroad's attorneys were better mathematicians than the plaintiff's attorneys. Impairment of earning capacity was by no means the only element of damage.

Between the end of November, 1959, when the plaintiff left the railroad's employ, and May, 1960, when he started working for the hardware company, we have at least five months of lost time, which at $2.02 an hour for an 8-hour day and 22-day month amounts to $1,677.60.

We next consider the matter of pain and suffering, past and future, plus some permanent disability. The evidence most favorable to the plaintiff is that his hands became swollen, cracked and weeping. When they cracked, the cuts would open down into his hands and they would bleed on the pillowcase. His fingernails curled up, and sometimes the half-moons on them would disappear and leave nothing but skin. For a few days the plaintiff could not sleep all night and pain pills were prescribed for him. The dermatitis extended to six inches above the wrists.

The railroad's doctor, in a report to the railroad after referring to "several exacerbations of allergic dermatitis," said:

"It would be unwise to have this 19 year old boy continue this type of work as each regression is more difficult to bring under control."

---

[3]Neither side to this controversy has suggested that a basic error in such computation is that it does not take into account the present value of the reduced earnings. See *Wentz v. T. E. Connolly, Inc.* (1954), 45 Wn. (2d) 127, 273 P. (2d) 485; *Kellerher v. Porter* (1948), 29 Wn. (2d) 650, 189 P. (2d) 223.

Another doctor testified that the plaintiff's repeated exposure to chromates in the diesel rust inhibitors had resulted in a partial disability, which would prevent his working in any job in which his hands came in contact with chromates. His condition is now such that even a little exposure to chromates may produce a reaction. As specific examples: On one occasion plaintiff's wrist had a breaking out as a result of contact with the chrome plating on the steering wheel of his car; on another occasion there was a breaking out on his wrist, as a result of wearing a leather wrist watch band, sweat having caused the chromate in the leather to leach out; on other occasions, in his work at the hardware store, the handling of nuts and bolts coated with rust inhibitors caused a flare-up on his hands. The testimony is that such reactions, with reasonable probability, will continue to result.

The evidence indicates that there are many industries which use chromates to such an extent that the plaintiff could not be employed in them.

The railroad, in its brief, says that the award for the pain and suffering endured and the repeated flare-ups from various causes "could not rationally exceed $1,000.00." They cite no cases to support this cavalier disposition of damages for pain and suffering. Nor can we find any within the last twenty years that would support it.

We do not agree with the railroad's rationalization of $1,000 as the maximum amount to be allowed for pain and suffering, even if it could be assumed that the dermatitis was now cured and over and done. But the railroad completely ignores the acquired permanent sensitivity to chromates that will cause a recurrence of the dermatitis if the plaintiff comes in contact with them, which limits his opportunities of employment. This was recognized as a distinct permanent injury in *Roderick v. St. Louis Southwestern R. Co.*, 299 S. W. (2d) 422 (Mo. 1957). When we consider time loss, pain and suffering, and a permanent sensitivity to chromates—together with the decreased earnings over a 45-year period—it is our view that the verdict is not excessive.

We come now to the assignments of error, which have to do with the trial. It is urged that the court should have permitted an inspection of the roundhouse where the plaintiff worked at the time he contracted the dermatitis.

■ Whether a view of the premises will be ordered, in any instance, is wholly within the discretion of the trial court, and any denial of such a request cannot be made the foundation of a claim of error.[4]

■ Error is assigned to the admission of photographs taken in April, 1961 (at the roundhouse where plaintiff had worked), as showing conditions between October, 1958, and November, 1959, when the plaintiff was working there. The plaintiff testified that each of the pictures was a reasonable representation of the ordinary daily conditions under which he worked. This was sufficient identification.[5]

■ There is an assignment that the trial court erred in permitting the plaintiff's counsel to perpetuate and emphasize testimony by copying on large sheets of paper, mounted on an easel, selected portions of the testimony. In neither place, in the record referred to in the briefs, is there anything to indicate what was written on the paper, or how long it was permitted to remain before the jury. So far as we are aware, there was nothing prejudicial in what was done, and we are unable to say that there was any abuse of discretion by the trial court in not interfering with the somewhat unusual procedures of plaintiff's counsel.

Error is claimed in that the trial court denied a mistrial after plaintiff testified that the railroad's claim agent had said, "I will give you seven hundred fifty dollars if you will sign a resignation."

The trial court sustained an objection and instructed the jury to disregard the statement.

■ In the first place, it was not a "flagrant and inflammatory" statement, as appellant labels it. It was, as the plaintiff told it, rather a natural statement from a harassed

[4]*Cole v. McGhie* (1962) *ante* p. 436, 367 P. (2d) 844; *Sauls v. Scheppler* (1960), 57 Wn. (2d) 273, 356 P. (2d) 714; *Finn v. Bremerton* (1922), 118 Wash. 381, 203 Pac. 971.

[5]*State v. Tatum* (1961), 58 Wn. (2d) 73, 360 P. (2d) 754.

claim agent who couldn't find a place for the plaintiff with the railroad after he had to quit at the roundhouse where he had been working. At the suggestion of the claim agent, the plaintiff had tried the car yards without success; the claim agent then got him a try-out in the IBM office typing out freight waybills, but after three days that office let him go. It was after this that the claim agent said, as testified to by the plaintiff, "I will give you seven hundred fifty dollars if you will sign a resignation."

In the second place, it was not an offer of settlement; the plaintiff's taking $750 to leave the employ of the railroad would terminate any responsibility of the railroad to find a place for him, but it certainly was not an offer of settlement for any injury or damages the plaintiff had sustained.

In the third place, the trial court's prompt action in sustaining the objection and instructing the jury to disregard the statement cured the error, if any.

Finally, the railroad attacks four instructions and one failure to instruct.

Instruction No. 7 called attention to the fact that this action was brought under the Federal Employers' Liability Act and that, by the terms of the act, an injured employee

". . . shall not be held to have assumed the risks of his employment in any case where the injury results in whole or in part from the negligence of any of the officers, agents or employees of such carrier. This provision of the statute applies even though the employee may have notice or knowledge of such negligence."

The railroad's contention that it was prejudicial error to give this instruction is based:

(1) On the following statement from Mr. Justice Frankfurter's concurring opinion in *Tiller v. Atlantic Coast Line R. Co.*, 318 U. S. 54, 72, 87 L. Ed. 610, 63 S. Ct. 444, 143 A. L. R. 967, speaking of the 1939 amendment to the Federal Employers' Liability Act:

". . . The carrier is not to be relieved from the consequences of its negligence by any claim that the employee 'assumed the risk' of its negligence. But neither is the carrier to be charged with those injuries which result from the 'usual risks' incident to employment on railroads—risks

which cannot be eliminated through the carrier's exercise of reasonable care.

" 'Assumption of risk' as a defense where there is negligence has been written out of the Act. But 'assumption of risk,' in the sense that the employer is not liable for those risks which it could not avoid in the observance of its duty of care, has not been written out of the law. Because of its ambiguity the phrase 'assumption of risk' is a hazardous legal tool. As a means of instructing a jury, it is bound to create confusion. It should therefore be discarded. But until Congress chooses to abandon the concept of negligence, upon which the Act now rests, in favor of a system of workmen's compensation not dependent upon negligence, the courts cannot discard the principle expressed, in one of its senses, by the phrase 'assumption of risk,' namely, that a carrier is not liable unless it was negligent."

(No instruction was involved in the *Tiller* case, which was dismissed at the close of the plaintiff's case in the district court, and the circuit court affirmed the dismissal. The supreme court reversed the circuit court and sent the case back for trial.)

(2) On the very literal interpretation by the Supreme Court of Utah in *Siciliano v. Denver & Rio Grande Western R. Co.*, 12 Utah (2d) 183, 186, 364 P. (2d) 413, 415, of the foregoing quotation. In that case, the Utah court said:

"In order to serve as a guide for instructions on assumption of risk in F.E.L.A. cases, we state that in the usual case it is prejudicial error to instruct that under the act the employee does not assume the risks of his employment occasioned by the employer's negligence, unless, as Mr. Justice McDonough pointed out in the Moore case, such issue was raised by the pleadings and evidence,—and we might add unless raised by the pleadings *or* evidence. There may be a case where the issue was not pleaded but where the evidence so emphasizes the fact that the employee recklessly and foolishly took on a known and dangerous hazard as to 'create improper inferences' that should be 'dispelled' by a cautionary instruction, as reflected in the language of Mr. Justice McDonough."

(Discussion of instructions in the *Siciliano* case was entirely gratuitous, the court having determined that "no

negligence had been established" and that the case should be dismissed.)

The Nebraska court has adopted what seems to us a more realistic attitude as to assumption of risk instructions. In *Ellis v. Union Pac. R. Co.*, 148 Neb. 515, 522, 523, 27 N. W. (2d) 921 (1947), it stated its understanding of the law relative to assumption of risk, under the FELA, as presently written, as follows:

"In cases similar to the one at bar, it is now the rule that assumption of risk as a defense has been removed from the law only if the risk involved was caused by or resulted in whole or in part from defendant's negligence. In other words, now the employee does not assume the risk of those dangers in his employment which are caused by or result in whole or in part from defendant's negligence, but the employee still assumes the risk of those ordinary dangers in his employment which are naturally inherent in the business and are not in whole or in part caused by or the result of defendant's negligence. Stated in another manner, the carrier cannot now be relieved from the consequences of its own negligence by claiming that the employee assumed the risk of its negligence. On the other hand, the carrier cannot be charged with or liable for those injuries which result from the usual risks incident to employment which cannot be eliminated by the carrier's exercise of reasonable care or for those caused by or resulting solely from plaintiff's own negligence, although his contributory negligence as a defense will only proportionately diminish his recovery."

It then held to be prejudicially erroneous an instruction which said:

" . . . 'You are instructed that the doctrine of assumption of risk has no place in this case, and that under the Federal Employers' Liability Act, the plaintiff cannot be held to have assumed the risk of his employment. . . . ' " saying,

"Instruction No. 10 not only had no relation to nor application in the action and should not have been given, but as given, its substance was also prejudicially erroneous for failure to correctly state the rule by reason of its omission of the aforesaid qualifications. It did not intelligently contain the qualification that the risks of his employment, which plaintiff could not be held to have assumed, were

only those risks caused by or resulting in whole or in part from defendant's negligence. . . ."

We would agree with the Nebraska court that an instruction such as that quoted, constituted prejudicial error for the reasons indicated; but, in this case, the instruction complained of contained the qualification and limitation to which the Nebraska court refers, *i.e.*, that the risks which the plaintiff could not be held to have assumed were those risks caused by or resulting in whole or in part from the carrier's negligence.

The same view was expressed by the United States Court of Appeals for the Fifth Circuit in *Atlantic Coast Line R. Co. v. Burkett*, 192 F. (2d) 941 (1951).

Missouri takes the position that an instruction like the instant one should not be given as a matter of routine in every FELA case, but that

" . . . The giving or refusal of such an instruction should depend upon the evidence and trial situation in the particular case. Such an instruction is of a cautionary nature and is to be given or refused in the sound discretion of the trial court. [citing numerous cases] . . ."

The foregoing quotation is from *Kiger v. Terminal R. Ass'n of St. Louis*, 311 S. W. (2d) 5, 11 (Mo. 1958). In that case it was held that the trial court did not abuse its discretion in giving an instruction that if the jury found that the plaintiff was injured, as the result of the defendant's negligence,

" ' . . . you cannot find against the plaintiff on the grounds that he assumed any risk involved by reason of such negligence . . .' "

See also a recent (1959) Arizona case, *Hoge v. Southern Pac. Co.*, 85 Ariz. 361, 339 P. (2d) 393 (1959).

We are of the view that questions asked on cross-examination by the railroad's counsel did "create improper inferences" that should have been "dispelled" by a cautionary instruction, and that the instruction in this case could be justified under the strict Utah rule. We prefer, however, not to commit ourselves to that rule.

    In this case, the railroad concedes that the issue

of negligence was properly submitted to the jury and there is no appeal from the jury's finding that the negligence of the railroad was the proximate cause of the plaintiff's dermatitis. How can there be prejudice (if we assume that the instruction should not have been given) from an instruction that tells the jury almost exactly what the statute says,[6] *i.e.*, that the employee of a common carrier shall not be held to have assumed the risks of his employment in any case where the injury results in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

It may be unfortunate that counsel continue to employ "a hazardous legal tool" by requesting "assumption of risk" instructions in FELA cases. Nevertheless, where the jury is instructed that the carrier is not liable unless it was negligent, and then that there is no assumption of risk where the injury results in whole or part from the negligence of the officers, agents, or employees of the carrier, we see no error or, at least, no prejudice. In short, if it is error to disregard the advice of the Supreme Court of the United States, as to what not to do in FELA cases, the error must still be prejudicial before we will reverse. *Capen v. Wester* (1961), 58 Wn. (2d) 900, 365 P. (2d) 326; *Herndon v. Seattle* (1941), 11 Wn. (2d) 88, 118 P. (2d) 421; *Murphy v. Chicago, Milwaukee & St. Paul R. Co.* (1912), 66 Wash. 663, 120 Pac. 525; *Cheichi v. Northern Pac. R. Co.* (1911), 66 Wash. 36, 118 Pac. 916.

The railroad next assigns error to an instruction that says that it is its *nondelegable* duty to exercise reasonable care to furnish its employees a reasonably safe place in which to work.

The railroad urges that there was never any question of an attempt to delegate any duty, and that the word "nondelegable" should not have been used. We agree that

---

[6]The statute says that in an action under the FELA an employee " . . . shall not be held to have assumed the risks of his employment in any case where such injury . . . resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." Title 45 U.S.C.A., § 54, p. 114.

it is a "formidable" word, and that it was not necessary to use it to adequately instruct the jury. However, we are satisfied its use did not infect the verdict rendered with prejudicial error.

■ The railroad urges that instructions No. 9 and No. 10 are repetitious and constitute overemphasis of one phase of the case. There is no exception to their accuracy. Instruction No. 9 says that an employer has a duty *to inform itself* of the nature and characteristics of substances and compounds used by it which are apt to cause injury to employees. Instruction No. 10 says that an employer has a duty to exercise reasonable care to protect *its employees* from contact with harmful compounds and substances. They might well have been combined in one instruction, but we see no error in their separation.

■ The railroad urges that a requested instruction should have been given. The only portion of this instruction called to the attention of the trial court, as shown by the exception taken, was:

". . . The defendant railroad company was not the insurer or guarantor of the safety of the plaintiff or any other employee. . . ."

That the law is as stated, no one will deny; but there is no authority holding that such a statement should be given to the jury in every FELA case. It seems to us entirely unnecessary in this case, where the jury was instructed:

"The basis of this action is negligence. The plaintiff is not entitled to recover merely because he has sustained illness or injury, but must prove by a fair preponderance of the evidence, that defendant was negligent in one or more particulars claimed, and that defendant's negligence was, in whole or in part, the proximate cause of the injury and damage claimed." (Instruction No. 5)

"In this connection, it is not enough for plaintiff to show that the place of work was in fact unsafe. Before he is entitled to recover he must also show that the defendant failed to exercise reasonable care to eliminate all danger which could be prevented or guarded against by the exercise of such care, and that plaintiff was injured as a proximate result of such failure." (Instruction No. 8)

There could be no reason to believe that the jury had any idea that the railroad could be held as an insurer or guarantor.

The judgment is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.