[No. 1661-1.   Division One.   August 27, 1973.]

JAMES BARTLETT, *Respondent*, v. BRUCE HANTOVER *et al.,* *Appellants.*

*Skeel, McKelvy, Henke, Evenson & Betts* and *F. V. Betts,* for appellants.

*Jack M. Sawyer,* for respondent.

CALLOW, J.—The defendants are the owners of a motel. They appeal a judgment based upon a jury award to their employee for gunshot wounds inflicted while he was at work.

The issues raised by the appeal concern the admissibility of evidence that safeguards were installed after the shooting, the failure to give an instruction limiting the use of such evidence, the giving of an instruction on damages that included lost earning capacity as an element, the claimed failure to prove it was negligent not to foresee the criminal act, and the failure to grant a judgment n.o.v. or a new trial on the ground that substantial justice had not been done.

On June 22, 1969, at about 10:30 p.m., the plaintiff, who worked as manager of the motel, was in the living quarters behind the office. When he heard the outside door open, he went into the office and stood behind the counter. Two men had entered and one was standing on the left and one to the right of the plaintiff approximately 6 feet away. The plaintiff asked each man separately if he could help him. One responded by saying they would like a room but immediately thereafter, the plaintiff was knocked to the floor by a bullet in the head. He was shot again in the left

shoulder as he tried to get up. There was never any mention of holdup or robbery, nor any demand for money; the plaintiff was "just point blank shot without asking, . . ."

Previously on March 19, 1969, the plaintiff had been the victim of an armed robbery in the same office. At that time he offered no resistance, no shots were fired and no one was injured. Between the two occurrences, the plaintiff suggested to the owners that they join an intermittent patrol system and also suggested the placing of a sign in the office to the effect that there was 24-hour surveillance. The owner replied by stating that in neither case would such precautions do any good. A few weeks after the shooting, the owners purchased and installed bulletproof glass and metal plating which made the portion of the motel office behind the counter bulletproof.

The trial court admitted testimony concerning the instal-. lation of boiler plate and bulletproof glass to protect the office area behind the counter. It is said in C. McCormick, *Evidence* § 275 (E. Cleary 2d ed. 1972):

After an accident causing injury, the owner of the premises . . . will often take remedial measures by repairing a defect, [or] installing a safety device, . . . Are these new safety measures, which might have prevented the injury, admissible to prove negligence as an implied acknowledgment by conduct that due care required that these measures should have been taken before the injury? In many instances the evidence, particularly when the remedial measures follow immediately the happening of the injury, may be very persuasive of the actor's belief as to the precautions required by due care before the accident. Nevertheless, the courts on occasion broadly assert that the evidence when offered for this purpose is irrelevant. While, like much circumstantial evidence, it admits of varying explanations, some of them consistent with due care, for this purpose it would often meet the usual standards of relevancy. The predominant reason for excluding such evidence, however, is not lack of probative significance but a policy against discouraging the taking of safety measures. At all events the courts do exclude, when offered as admissions of negligence or fault, evidence of remedial safety measures

taken after an injury, such as repairs, changes in construction, [or] installation of new safety devices . . . . . .

The ingenuity of counsel in suggesting other purposes has made substantial inroads upon the general rule of exclusion. Thus evidence of subsequent repairs or changes has been admitted as evidence of . . . the possibility or feasibility of preventive measures, when properly in issue; . . .

As suggested above, the extrinsic policy of encouraging remedial safety measures is the predominant reason for holding evidence of these measures to be privileged. It is apparent that the free admission of such evidence for purposes other than as admissions of negligence is likely to defeat this paramount policy. It is submitted that before admitting the evidence for any of these other purposes, the court should be satisfied that the issue on which it is offered is of substantial importance and is actually, and not merely formally in dispute, that the plaintiff cannot establish the fact to be inferred conveniently by other proof, and consequently that the need for the evidence outweighs the danger of its misuse. The defendant of course, upon request, will be entitled to an instruction limiting its use to the issue upon which it is admitted.

(Footnotes omitted.)

We have deleted inapplicable portions of the text but suggest a reading of the full coverage for a listing of the numerous exceptions to the exclusion of such evidence. The defendant objected to the testimony claiming that the defense had not raised the issue of feasibility and that permitting such testimony would discourage anyone from installing safeguards lest such action be interpreted as an admission of negligence.

■ The rule adopted in this state is that when a plaintiff alleges creation or maintenance of a condition or set of circumstances as negligence because of a lack of safeguards, he can make an issue of the feasibility of safeguards in connection with the charge of negligence and introduce evidence of subsequent repairs. *Brown v. Quick Mix Co.*, 75 Wn.2d 833, 454 P.2d 205 (1969); *Stark v. Allis-Chalmers*, 2

Wn. App. 399, 467 P.2d 854 (1970); 5 R. Meisenholder, Wash. Prac. § 10 (Supp. 1972).

*Brown* said at page 839:

under the exceptions to the general rule the evidence of subsequent repairs is not admissible to prove prior negligence, such evidence may be admitted for the limited purposes of showing dominion or control over the instrumentality or to show the practicality of the use of a safeguard. We have held it admissible where feasibility was a factor in the plaintiff's case. . . .

If the evidence is competent to show that the use of a safeguard is feasible, and the issue of feasibility is in the case, the evidence is competent regardless of whether the issue is a part of the plaintiff's case, with the burden of establishing it being upon him (which is true in the ordinary negligence case), or the defendant injects it as a defense.

(Citations omitted.)

The trial judge expressed his concern regarding the possibility of the abuse of such evidence to prove negligence by inferring an admission of negligence from the act of repair. The peril of such use by counsel does exist and restraint on misuse must be exercised by a trial court. However, the record in this case does not show that the scope of the feasibility exception, as delineated in this state, was exceeded. *See O'Keefe v. Boeing Co.*, 335 F. Supp. 1104, 1127 (S.D.N.Y. 1971); *Reil v. State*, 4 Wn. App. 976, 484 P.2d 1150 (1971). Therefore, the evidence was admissible and put to proper use.

■ ■ The trial court, out of the presence of the jury, stated:

I will therefore permit the witness to testify as to the repairs . . . and I will, . . . give a limiting instruction as to the purpose of such evidence . . .

No instruction was proposed or given. It may have been that the defense concluded that the giving of such an instruction would only emphasize the evidence to the jury. This may have been the strategic option of the defense. However that may be, when the opportunity was given to

make objections to the failure to give such a limiting instruction, no exception was taken to the instructions given by the court nor objection made to the failure to give any of the instructions proposed by the defense on the issue of liability. Under these circumstances, the claim of error cannot be reviewed. *Sargent v. Safeway Stores, Inc.*, 67 Wn.2d 941, 410 P.2d 918 (1966); *Brown v. Coca-Cola Bottling, Inc.*, 54 Wn.2d 665, 344 P.2d 207 (1959); CR 51(a), (f). The burden is on each party to propose such instructions as state the law applicable to his theory of the case. 2 L. Orland, Wash. Prac. § 244 (3d ed. 1972).

█ The defendant objects to the portion of the instruction on damages given by the trial court which permitted the jury to consider as an element:

> The reasonable value of earnings and earning capacity lost together with the present cash value of the earning capacity reasonably certain to be lost in the future.

on the ground that there was no evidence of past earnings establishing what the earning capacity of the plaintiff had been. It is claimed this is a requisite support for the instruction. *See* WPI 30.07, 6 Wash. Prac. 153 (1967). We address ourselves to the claimed error and not to the possibility that a duplication of elements of damage may be reflected in the instruction. (The concept that earnings and earning capacity may be lost to the day of trial is duplicative.)

Care should be taken to distinguish lost time, lost earnings and lost wages from the loss of a capacity to earn. In order to instruct on lost earning capacity, the evidence must show with reasonable certainty that the injured party has suffered an impairment in his ability to make a living. C. McCormick, *Damages* § 86, at 299 (1935). Confusion arises from premising the right to recover for lost or impaired earning capacity on a supposedly indispensable evidenciary foundation relating to the level of earnings achieved by the plaintiff before the physical injury was suffered. This is not the basis for recovery of lost earning capacity. Rather, the showing that must be made is that the

injury suffered by the plaintiff is an injury that, in fact, has diminished the ability of the plaintiff to earn money. *Murray v. Mossman,* 52 Wn.2d 885, 889, 329 P.2d 1089 (1958). The requirement of the law leaves the fixing of the amount of loss to the discernment of the jury. Thus, a child of 3 and an unemployed man of 71 can suffer a loss of earning capacity. *Sherman v. Seattle,* 57 Wn.2d 233, 356 P.2d 316 (1960); *Riddel v. Lyon,* 124 Wash. 146, 213 P. 487, 37 A.L.R. 486 (1923). Evidence of physical impairment must be presented and from that evidence of injury to the body and/or mind of the plaintiff, the jury must assess the amount that will compensate for his lessened money-making faculties and reduced income potentialities. *Kelley v. Great N. Ry.,* 59 Wn.2d 894, 371 P.2d 528 (1962); *Johnson v. Howard,* 45 Wn.2d 433, 275 P.2d 736 (1954); *Handley v. Anacortes Ice Co.,* 5 Wn.2d 384, 105 P.2d 505 (1940); *Shephard v. Smith,* 198 Wash. 395, 88 P.2d 601 (1939); *Hirst v. Standard Oil Co.,* 145 Wash. 597, 261 P. 405 (1927); Annot., 18 A.L.R.3d 88 (1968). Evidence of the bodily impairment suffered from the two gunshot wounds amply supported lost earning capacity as an element of damages.

■ As a general proposition, one citizen does not owe a duty to another citizen to protect the other against the criminal acts of a third person. W. Prosser, *Torts* § 33 (4th ed. 1971). However, a relationship between two parties may give rise to a duty in the one to foresee and anticipate that a risk of harm exists as to the other. As stated in *McLeod v. Grant County School Dist. 128,* 42 Wn.2d 316, 321, 255 P.2d 360 (1953):

> Whether or not an intervening act is criminal in nature, is a fact to be considered in determining whether such act was reasonably foreseeable. But intervening criminal acts may be found to be foreseeable, and if so found, actionable negligence may be predicated thereon.

*See also Sitarek v. Montgomery,* 32 Wn.2d 794, 203 P.2d 1062 (1949); *Jones v. Leon,* 3 Wn. App. 916, 478 P.2d 778 (1970). Thus, an employer owes to an employee a duty to provide a safe place to work. *Lillie v. Thompson,* 332 U.S.

459, 92 L. Ed. 73, 68 S. Ct. 140 (1947); *Torrack v. Corpamerica, Inc.,* 51 Del. 254, 144 A.2d 703 (1958). The employer has a duty to make reasonable provision against foreseeable dangers of criminal misconduct to which the employment exposes the employee. Annot., 9 A.L.R.3d 517 (1966). Where the nature of the work is such that it exposes the employee to the risk of injury from the criminal acts of third persons, a jury question is raised as to whether the employer has been negligent in not foreseeing the risk of criminal acts and acting to protect employees against the danger. *Atlantic Coast Line R.R. v. Godard,* 211 Ga. 373, 86 S.E.2d 311 (1955); 53 Am. Jur. 2d *Master & Servant* §§ 215, 216 (1970); Annot., 10 A.L.R.3d 619 (1966). The evidence was properly submitted to the jury for decision upon the issue of negligence.

Following argument upon the motion for judgment n.o.v. or in the alternative for a new trial, the trial court expressed its reaction that the decision on liability was a factual question for the jury but said also, "I am concerned about the question of whether substantial justice has been done without a limiting instruction on the evidence of subsequent changes in the premises, . . ." Thereafter, judgment was entered for the plaintiff.

█ The failure to give an instruction will not support the granting of a new trial unless an exception is taken to the omission. *Sargent v. Safeway Stores, Inc., supra; Pritchett v. Seattle,* 53 Wn.2d 521, 526, 335 P.2d 31 (1959). Further, a review of the record confirms the conclusions of the trial court. There were no "definite reasons of law and facts" that would justify usurping the function of the jury and overturning its decision. *Knecht v. Marzano,* 65 Wn.2d 290, 396 P.2d 782 (1964); *Mulka v. Keyes,* 41 Wn.2d 427, 249 P.2d 972 (1952).

The judgment is affirmed.

HOROWITZ and FARRIS, JJ., concur.

Petition for rehearing denied October 29, 1973.

Review granted by Supreme Court December 17, 1973.