501 P.2d 401

**Hugh L. DOWNS, Appellant,**

v.

**Robert G. SHOUSE et al., Appellees.**

**No. 2 CA–CIV 1164.**

Court of Appeals of Arizona,
Division 2.

Sept. 25, 1972.

D'Antonio & Videen by Garven W. Videen, Tucson, for appellant.

Laber, Morrow, Lovallo & Colarich, Ltd. by Paul W. Colarich, Jr., Tucson, for appellees.

KRUCKER, Chief Judge.

This appeal arises out of the circumstances of the sale of a Piper Cherokee 235 airplane by appellant, defendant below, to appellees, plaintiffs below.

Plaintiffs initially filed a complaint in replevin, alleging *inter alia* ownership of the plane and the wrongful removal of certain equipment (a radio and distance-measuring device) from the plane by the defendant. They requested recovery of possession of the equipment or damages and posted a replevin bond. No redelivery bond was delivered to the sheriff within the statutory prescribed period. Therefore, the equipment was seized by the sheriff and delivered to plaintiffs.

Defendant filed a responsive pleading and counterclaimed for $1500, allegedly owed to him as part of the purchase price of the plane. The plaintiffs filed an amended complaint and a reply to the counterclaim; defendant then filed an amended answer. The amended complaint set forth three counts. Count one reiterated the allegations of the replevin complaint; count two alleged breach of express warranty; and count three alleged breach of implied warranty.

The case was tried to the court sitting without a jury. The court entered judgment in favor of the plaintiffs and against the defendant for $138.68 for breach of warranty,[1] and $500 compensatory and $400 punitive damages (for what must be assumed to be for the replevin count), plus plaintiffs' costs. It is from this judgment that defendant appeals.

The sequence of events viewed in a light favorable to the judgment are as follows. In December, 1969, the parties entered into negotiations for the purchase of a Piper Cherokee 235 airplane. During the course of their conversations the defendant described how the aircraft had been maintained, specifically mentioning that the oil was changed every 50 hours as recommended by the service manual. Prior to the sale, both parties agreed to have Leo Reisdorf, an airplane mechanic, check the plane. Upon his inspection of the logbook, Reisdorf recommended that the plaintiffs have a 100-hour inspection. This inspection would have entailed, among other things, a visual check of the bolts on the adaptor plate to see if they were securely fastened. Plaintiffs elected instead to have an oil change.

On December 18, 1969, in reliance upon defendant's assertions as to the airplane's mechanical condition, the plaintiffs purchased the plane for $15,500, and the defendant endorsed the F.A.A. bill of sale in blank. The purchase price was to be paid as follows: $2,000 down, $1,500 by a promissory note payable within 60 days or on demand, and the balance by paying off an

1. The court, in awarding $138.68 damages for "breach of warranty" offset the unpaid balance of the purchase price of $1500 with the actual damages of $1,628.58 which were incurred. Plaintiffs concede that as to the breach of warranty the court erred in adopting their erroneous mathematics and they are only entitled to $128.58.

existing lien that defendant owed the First National Bank of Arizona.

Although plaintiffs had not presented the note or paid the $1,500 to defendant, and had not paid off the existing lien, on December 18 they took possession of the airplane with defendant's permission.

Pursuant to a prior lease arrangement between plaintiffs and Skyliners, Inc., Co., a flying club of which plaintiffs were members of the Board of Directors, one of the club members flew the plane for 2.3 hours on December 19. On December 20, another of its members flew the plane. Prior to taking the plane out, he conducted a pre-flight inspection which revealed that there were 12 quarts of oil in the plane. After reaching 8,500 feet and discovering that the oil pressure was dropping, he turned the airplane around and headed toward the Avra Valley Airport. An examination of the plane upon landing revealed an oil leak at the oil filter adaptor plate where it was bolted to the engine, resulting in the sum of $1,628.58 being expended for repairs.

Because he had not been fully paid, the plaintiffs having refused to pay him the $1,500 because of the damage to the plane, on January 13 Downs went to the Avra Valley Airport, where the plane was hangered, and removed a radio and a distance measuring device from the aircraft. Although the plane was registered in Downs' name at the time, he had no agreement that the airplane was to be security for the unpaid purchase money. Plaintiffs expended $750 in purchasing a used radio to replace the one Downs had taken.

On appeal, defendant contends that plaintiffs were not entitled to recover damages either for breach of warranty or on the replevin count. We shall consider these contentions *seriatim*. We do, however, feel constrained to point out that the posture of this case, both in the trial court and on appeal, can hardly be called a model of clarity.

## BREACH OF WARRANTY

It is defendant's position that the plaintiffs had no claim for breach of implied warranty and we agree. Although it is not clear whether the court gave judgment for "breach of warranty" upon a theory of express warranty or implied warranty, it is certain that the judgment cannot be sustained upon the latter theory. A.R.S. § 44–2331 (U.C.C. 2–314) provides in part:

"A. Unless excluded or modified (§ 44–2333), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . ."

A.R.S. § 44–2304 (U.C.C. 2–104) defines merchant as:

"A. 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

■ Downs, not being a merchant as defined in A.R.S. § 44–2304, there can be no implied warranties attributed to him in the sale of the airplane to the plaintiffs. *See*, 3 Bender's U.C.C. Services, Sales & Bulk Transfers § 701[2] [a].

We are of the opinion, however, that the judgment can be sustained on the theory of express warranty. This type of warranty is created under A.R.S. § 44–2330, subsec. A, par. 1 (U.C.C. 2–313(1)(a)) when the seller represents:

"Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain. . . ."

Defendant initially contends that his description of how the airplane had been maintained did not constitute an "affirma-

tion of fact" but a mere opinion and since Reisdorf advised the plaintiffs to have a 100-hour inspection, that Downs' statements as to the mechanical condition of the plane could not be the basis of the bargain.

■ Oftentimes one of the greatest difficulties in finding an express warranty is distinguishing between fact and opinion. Prior to the Code, a statement of opinion, or what has been sometimes referred to as "puffing," did not give rise to an express warranty. Jorgensen Co. v. Tesmer Manufacturing Co., 10 Ariz.App. 445, 459 P.2d 533 (1969). The Code has not changed that. A.R.S. § 44–2330, subsec. B is explicit on this point. It provides:

"B. It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

In distinguishing between fact and opinion, one authority has stated:

". . . [T]he real test should be: What statements by the seller were part of the basis of the bargain? . . . What was he led to believe and what could he justifiably rely upon? The use of the word reliance here, even though not used specifically in Section 2–313, [A.R.S. § 44–2330] would still seem to have some relevance. It would have relevance in distinguishing between fact and opinion; it would have relevance also in distinguishing between known and unknown defects. For example, if the particular defect was quite obvious and the buyer should have discovered it, then it would be difficult to find an actionable express warranty on the part of the seller." (3 Bender's U.C.C. Service, Sales & Bulk Transfers § 605 at 6–10)

■ Applying this test, the evidence shows Downs' statement was not merely a casual expression intended to be under-

stood as his opinion. Several meetings took place between the parties before the plaintiffs decided to buy the plane. Robert Shouse, who had bought several used planes in the past, testified:

"Well, when you are purchasing a used aircraft in the conversation with the owner you are going to rely on what he says, how he represents the airplane to be. You can make a visual inspection of the airplane but he is the man that is in the position to know best what has happened to that airplane and the kind of care it has gotten."

■ While it is true that the plaintiffs did not get a 100-hour inspection, testimony shows that such a casual inspection would not have revealed whether the adaptor plate bolts were the recommended tightness—60 lbs. per inch. This, therefore, being a defect which could not reasonably be discovered, did not negate the existence of an express warranty. *See,* Colvin v. Superior Equipment Co., 96 Ariz. 113, 392 P.2d 778 (1964); Capital Equipment Enterprises, Inc. v. North Pier Terminal Co., 117 Ill.App.2d 264, 254 N.E.2d 542 (1969).

Defendant next contends that even if he had made an express warranty, it was not breached due to the fact that the airplane was delivered in good condition. In support of his argument, he points to the fact that the plane was flown on December 18 with no apparent problems and that Leo Reisdorf, a mechanic who had inspected the plane one day prior to the accident, was of the opinion that the plane was airworthy.

It is apparent from the testimony that at least one of the nuts on the bolts around the oil filter adaptor plate was not the recommended tightness—60 lbs. per inch, thus causing the high pressure oil leak which resulted in damage to the plane. Testimony of Ron Schuette, a mechanic who had worked on this type of airplane, revealed that if the tightness on these nuts was anything but 60 pounds, a high pressure oil leak would occur. He further indicated

that these nuts very rarely will suddenly loosen up. The fact that the plane was flown on December 18 and that the plane could be flown the next day does not suggest that the nuts were sufficiently tight on the day of the sale and that they suddenly loosened causing the oil leak. Schuette's testimony infers quite the opposite.

■■ Since this case was tried to the court, we will not reverse if on any reasonable view of the evidence there are sufficient facts to sustain the judgment. Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965). We believe the testimony of Schuette coupled with the fact that the plane was flown for such a short time after the sale was sufficient to raise a reasonable inference that the defective condition of this plane existed prior to the sale. *See*, e. g., Reader v. General Motors Corp., 107 Ariz. 149, 483 P.2d 1388 (1971).

■ Defendant argues that even if there was a breach of warranty, plaintiffs did not incur any damages as a result of this breach since the lessee, Skyliners' Inc., had paid for the repairs. We find no merit in this contention for the record clearly reveals that plaintiff Shouse provided the funds necessary for the repairs. The plaintiffs, as owners of the plane, had the right to maintain the action. 59 Am.Jur.2d Parties § 29 (1971).

■ Further, he argues that there is no evidence showing the market value of the airplane. Therefore, he concludes, plaintiffs have not met their burden in proving damages. It is true, under A.R.S. § 44–2393, subsec. B (U.C.C. 2–714(2)), as it was prior to the enactment of the Code, that damages in cases of breach of warranty are ordinarily measured by the difference between the actual value of the article sold and its value if it were as warranted. This section is not exclusive of the buyer's remedies where the property is not totally destroyed. If by reasonable expenditure goods may be made to conform to the warranty, the amount of such expenditure may be the measure of such damages. Melvin v. Stevens, 10 Ariz.App. 357, 458 P.2d 977 (1969); Annot. 73 A.L. R.2d 719. The plaintiffs introduced evidence showing that the repairs incurred as a result of the breach of warranty were $1,628.58. The difference between this sum and the $1,500 due to defendant is $128.58. The allowance of $138.68 was a mere mathematical error because of adoption of counsel's incorrect computation which may properly be corrected by this court on appeal. Cagle v. Carr, 101 Ariz. 225, 418 P.2d 381 (1966).

## REPLEVIN

The plaintiffs' replevin count was predicated upon the defendant's wrongful detention of the radio and distance measuring device from the airplane for a period of approximately 62 days. As noted above, the court awarded $500 as compensatory damages and $400 as punitive damages. We are unable to find any evidentiary basis for the $500 award other than the statement of plaintiffs' counsel in his trial memorandum that "reasonable compensatory damages for the detention would be the sum of $500.00."

■ We agree with defendant that the plaintiffs were not entitled to recover the usable value of the equipment during the period it was detained. The controlling principle is that damages for wrongful detention are only recoverable by one who had a legal right to use the property and was in a position to use it, but was prevented therefrom by the wrongful detention. Higgins v. Guerin, 74 Ariz. 187, 245 P.2d 956 (1952); 46 Am.Jur. Replevin § 143 (1943). *See, also*, Annot. 33 A.L.R.2d 775. Here, the plaintiffs failed to establish that they had the right to use the property and were in a position to do so. In fact, the record clearly reflects that the right to use the plane was in the lessee, Skyliners. Consequently, an award for loss of use was erroneous.

■ Since no actual damages were sustained, the requisite predicate for recovery

of punitive damages was lacking. Craviolini v. Scholer & Fuller Associated Architects, 101 Ariz. 33, 415 P.2d 456 (1966); Gomez v. Dykes, 89 Ariz. 171, 359 P.2d 760 (1961); Barker v. James, 15 Ariz.App. 83, 486 P.2d 195 (1971).

For the foregoing reasons, the judgment as to damages for breach of warranty is affirmed, but modified to $128.58, and is reversed as to the replevin count. The case is remanded with directions to enter an appropriate judgment not inconsistent herewith.

HOWARD and HATHAWAY, JJ., concur.