574 P.2d 856

**CIRCLE K CORPORATION, a corporation, Appellant and Cross Appellee,**

v.

**Morris ROSENTHAL, Appellee and Cross Appellant.**

**No. 2 CA–CIV 2432.**

Court of Appeals of Arizona, Division 2.

Dec. 7, 1977.

Rehearing Denied Jan. 12, 1978.

Review Denied Feb. 7, 1978.

Stompoly & Even, P. C. by John G. Stompoly, John Patrick Lyons, Tucson, for appellant and cross appellee.

Miller, Pitt & Feldman, P. C. by Janice A. Wezelman, John L. Tully, Tucson, for appellee and cross appellant.

OPINION

RICHMOND, Judge.

Morris Rosenthal, a clerk working in the Circle K store at Grant Road and Campbell Avenue in Tucson, was shot by an armed robber a few minutes after midnight on July 1, 1974. He commenced an action for his injuries against his employer, alleging that Circle K negligently failed to provide him a reasonably safe place to work. In its answer Circle K raised the defense that

Rosenthal's sole remedy lay under the Workmen's Compensation Act, and that issue was severed for trial, which resulted in a judgment in favor of Rosenthal. A second trial on Rosenthal's amended complaint, alleging both negligence and breach of an oral contract, also resulted in a judgment in his favor.

Circle K has appealed on the alternative grounds that the trial court lacked jurisdiction over the subject matter, and that the evidence did not support a judgment against it based either on negligence or breach of contract. Rosenthal by cross-appeal challenges the adequacy of the judgment in his favor, and seeks attorney's fees on appeal under A.R.S. § 12–341.01.[1] The judgment is affirmed in all respects.

■ At the trial of the jurisdictional issue, the court made findings of fact and conclusions of law to the effect that Rosenthal was entitled to reject benefits under the Workmen's Compensation Act and maintain a common law action against his employer because Circle K had not complied with A.R.S. § 23–906, as amended,[2] by hav-

1. § 12–341.01 Recovery of attorney's fees.

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney's fees.

B. The award of reasonable attorney's fees should be made to mitigate the burden of the expense of litigation for a just claimant. It need not equal or relate to the attorney's fees actually paid or contracted.

C. Reasonable attorney's fees awarded under the provisions of this section shall be awarded by the court, and not by a jury. In making such award, the court may consider such evidence as it deems appropriate, and may receive this evidence during trial on the merits of the cause, or separately, as it deems in the best interest of the litigating parties. Added Laws 1976, Ch. 170, § 2.

2. Liability under chapter or under common law of employer securing compensation; right of employee to make election; procedure for making election

A. Employers who comply with the provisions of § 23–961 as to securing compensation shall not be liable for damages at common law or by statute, except as provided in this section, for injury or death of an employee wherever occurring, but it shall be optional with employees to accept compensation as provided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law.

B. The employee's election to reject the provisions of this chapter shall be made by a notice in writing, signed and dated by him and given to his employer, in triplicate in substantially the following form:

"To (name of employer):
You are hereby notified that the undersigned elects to reject the terms, conditions and provisions of the law for the payment of compensation, as provided by the compulsory compensation law of the state of Arizona, and acts amendatory thereto."

C. The notice shall be filed with the employer prior to injuries sustained by the employee, and within five days the employer shall file with his insurance carrier a duplicate of the notice so served by the employee. All employees shall be conclusively presumed to have elected to take compensation in accordance with the terms, conditions and provisions of this chapter unless the notice in writing has been served by the employee upon his employer prior to injury.

D. Every employer engaged in the occupations designated in this chapter shall post and keep posted in a conspicuous place upon his premises, in all languages spoken by his employees and available for inspection by all workmen, a notice in substantially the following form:

"All employees are hereby notified that in the event they do not specifically reject the provisions of the compulsory compensation law they are deemed by the laws of Arizona to have accepted the provisions of such law, and to have elected to accept compensation under the terms of such law, and that under the terms thereof employees have the right to reject the same by written notice thereof prior to any injury sustained, and that blanks and forms for such notice are available to all employees at the office of this company."

E. If an employer fails to post and keep posted the notice as required by this section, or fails to keep available at the place where the employees are hired the blank forms of notice to be signed by the employee, no employee who thereafter engages in employment for such employer, during the time that the notices are not posted or during the time that the blanks are not available, shall be deemed to have accepted the provisions of this chapter, and it shall be optional for such employee, if injured during the period when blanks were not available or the notice was not posted, to accept compensation under the provisions of this chapter or maintain other action against the employer. As amended Laws 1971, Ch. 173, § 7; Laws 1977, Ch. 109, § 1.

ing failed prior to and at the time of the robbery to post and keep posted the notice required by § 23–906(D), and to have available the rejection notices required by § 23–906(B).

We are not at liberty to disregard the trial court's findings unless clearly erroneous. 16 A.R.S., Rules of Civil Procedure, Rule 52(a). Circle K argues that there is no evidence to support the finding that the statutory notice was not posted at the time of the robbery, because the testimony of Rosenthal and a fellow employee that they did not recall having seen the notice was negative, and therefore insufficient under *Jeune v. Del E. Webb Const. Co.,* 76 Ariz. 418, 265 P.2d 1076 (1954). The argument ignores the testimony of Albert M. Schaeffer, a lawyer and friend of Rosenthal who visited him in the hospital on the morning of the day that he was injured and then went directly to the store, primarily to try to locate Rosenthal's eyeglasses. While there he spent 15 to 20 minutes looking at every notice on a bulletin board in the back room, where a witness for Circle K testified he had seen the workmen's compensation notice in April and July, 1974. Schaeffer testified that he did not see the type of notice required by the statute.

■■■ Circle K objected to Schaeffer's testimony, and argues on appeal that there is no relevancy to the fact that the notice was not posted after Rosenthal's injury, but the rule is well established that evidence of the existence of a particular fact before or after an act in question may be shown to indicate the existence of that same condition at the time of the accident. *City of Phoenix v. Boggs,* 1 Ariz.App. 370, 403 P.2d 305 (1965). Where the likelihood of a change is inherent in the fact situation, the testimony concerning the situation which is presumed to continue must be fairly close to the event, and the more volatile the situation the nearer to the event must the observation be in order to have probative value. *Montgomery Ward & Co. v. Wright,* 70 Ariz. 319, 220 P.2d 225 (1950). The admission of evidence is a matter largely within the discretion of the trial court and

its ruling will not be disturbed except where there is shown an abuse of discretion. *Throop v. F. E. Young and Company,* 94 Ariz. 146, 382 P.2d 560 (1963). We are unable to agree that Schaeffer's observation the same day as the robbery was so remote in time as to render the admission of his testimony an abuse of the trial court's discretion.

Schaeffer was asked specifically why he looked at the notices on the board:

"It immediately became apparent to me, when I talked with Mrs. Rosenthal at the hospital, that this injury occurred under circumstances which would give rise either to a workmen's compensation claim, or a common law claim. And, from previous legal matters that I'd handled, it just came as a kind of a natural reaction that I was looking for any possible way to exclude the case from the workmen's compensation benefits."

The foregoing answer distinguishes his testimony from the negative evidence rule of the *Jeune* case, where "[n]ot one witness stated that in any instance he had any occasion to be looking or did look to see if a notice was posted nor any fact to give his negative testimony an adequate foundation upon which to base an inference that such a notice was not conspicuously posted." 76 Ariz. at 424, 265 P.2d at 1079.

■■■ Circle K also contends it was error to reject offered proof that the appropriate notice was posted conspicuously at another store where Rosenthal had worked eight hours in April, and still another where he had worked five hours in June. It argues that this evidence would have established its compliance with the mandate of § 23–906(D) to post the notice upon its "premises" so that it is "available for inspection" by all workmen. The argument ignores the obvious legislative intent that the information contained in the notice be made readily available to employees on a continuing basis. The fact that Rosenthal might have been exposed to the notice at some location other than his regular place of work was immaterial, and the evidence was properly excluded.

In view of our holding regarding the notice, we need not consider the more dubious finding of fact as to availability of the rejection notices.[3]

At the second trial, the court found that Circle K failed to follow reasonable available security practices that more probably than not would have averted Rosenthal's injury, and that it was foreseeable that such failure would increase the risk of injury to Circle K employees. The court also found that at the time his employment commenced, Rosenthal was promised by the Circle K agent who hired him that he would not have to work alone at night; that there was consideration for the promise; that Rosenthal would not have taken the job without it, and that more probably than not the robbery and his injury would not have occurred if he had not been required to work alone on the night in question. The court concluded that Rosenthal was entitled to recover damages either on the basis of Circle K's negligence in failing to provide a reasonably safe place for him to work or for its breach of the promise that he would not be required to work alone at night.

■■■ Circle K concedes that an employer in Arizona has a duty to provide his employees with a reasonably safe place to work, *Bond v. Cartwright Little League, Inc.,* 112 Ariz. 9, 536 P.2d 697 (1975), but urges adoption of the rule that liability for injury caused by the intervening criminal acts of third persons should not attach unless it is clearly shown that the employer in some manner greatly and unreasonably increased the risk of exposure to such acts without taking reasonable precautions for the safety of the employee. *Thoni Oil Magic Benzol Gas Stations, Inc. v. Johnson,* 488 S.W.2d 355 (Ky.1972). Other courts follow the rule that an employer may be liable for mere failure to act to protect his employees from reasonably foreseeable criminal conduct. *Lillie v. Thompson,* 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947); *Bartlett v. Hantover,* 9 Wash.App. 614, 513 P.2d 844 (1973), reversed on other grounds, 84 Wash.2d 426, 526 P.2d 1217 (1974); *see* Restatement, Second, Torts § 302B, Comment (e)(B). In the absence of prior decisions to the contrary, Arizona has consistently followed the Restatement. *MacNeil v. Perkins,* 84 Ariz. 74, 324 P.2d 211 (1958).

The findings and conclusions related to negligence were based on evidence of numerous previous robberies at Circle K stores in the Tucson area, the testimony of an expert witness regarding security practices and devices available to Circle K at the time but not being used at the store in question, and the expert's opinion that the security system in effect at the time of the robbery was not sufficient to provide reasonable safety for Circle K employees.

The findings and conclusions as to breach of contract are supported by Rosenthal's testimony and the opinion of a psychiatrist that Rosenthal probably would not have been injured if another employee had been in the store, because it appeared from the facts that the robber shot Rosenthal in order to eliminate him as the only potential witness to the crime.

■■■ We need not decide whether opinion evidence on the adequacy of the security system was appropriate, because the court could have inferred from the other evidence that the robbery was foreseeable under the circumstances and Rosenthal's injury could have been prevented with reasonable care by additional security measures or the presence of another employee. The trial court's judgment will be affirmed where there is sufficient proper evidence to sustain it, regardless of the propriety of other evidence before it. *Taylor v. Mueller,* 24 Ariz.App. 403, 539 P.2d 517 (1975).

---

**3.** The trial court's finding and conclusion that the workmen's compensation rejection notices were unavailable was based on the testimony of Schaeffer and another lawyer that when they went to the Circle K employment office five days after the accident, two employees in charge of insurance and workmen's compensation benefits were unable to locate the forms, although it is undisputed they were in a file drawer on the premises. One of the employees, the area office manager, located the forms the same day, after the lawyers left the office, by phoning his predecessor who had been transferred to another department.

On the contract claim, Circle K contends that Rosenthal's failure to take reasonable steps to mitigate his damages, either by accepting an offer from his fellow employee to stay an extra hour, or by telephoning his superior at home for permission to close early, is a bar to recovery. *Coury Bros. Ranches, Inc. v. Ellsworth,* 103 Ariz. 515, 446 P.2d 458 (1968). One claiming the benefit of the doctrine of avoidable consequences has the burden of proving that losses could have been avoided by reasonable conduct on plaintiff's part. *Barnes v. Lopez,* 25 Ariz.App. 477, 544 P.2d 694 (1976). The trial court found that Rosenthal did not act unreasonably, and the record does not compel a contrary conclusion. In a case tried to the court, we will not reverse if on any reasonable view of the evidence there are sufficient facts to sustain the judgment. *Downs v. Shouse,* 18 Ariz.App. 225, 501 P.2d 401 (1972).

Circle K also argues that Rosenthal could have closed the store when his fellow employee left at midnight, but the robbery occurred so soon thereafter that it is reasonable to infer he could not have completed the normal closing procedure in time to avoid injury.

The court awarded Rosenthal the sum of $35,388.09, including past medical expenses of $4,888.09, future medical expenses of $10,500, and $20,000 general damages for the permanent loss of the sight of one eye and severe emotional distress. Rosenthal on cross-appeal challenges the assessment of general damages. It is not for this court, however, to determine on appeal the amount of money that would compensate him for his injuries if there is substantial evidence from which reasonable men could have found for him in the amount in question. *Meyer v. Ricklick,* 99 Ariz. 355, 409 P.2d 280 (1965). The trial court had the advantage of seeing Rosenthal and the other witnesses. We are unable to say as a matter of law that the award of $20,000 to a 69-year-old man for the loss of use of one eye and his other injuries was inadequate.

Rosenthal seeks attorney's fees on appeal under prospective application of A.R.S. § 12–341.01, which became effective after trial but during pendency of this appeal.[4] The statute is permissive rather than mandatory. Because there is nothing in the record to suggest what portion of the fees is related to the claim arising out of the oral contract as distinguished from the negligence claim or the cross-appeal, Rosenthal's request for attorney's fees on appeal is denied.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

### ON MOTION FOR REHEARING
### SUPPLEMENTAL OPINION
### REHEARING DENIED

RICHMOND, Chief Judge.

Appellee in a motion for rehearing challenges this court's refusal to award attorney's fees on appeal pursuant to A.R.S. § 12–341.01, asserting that approximately 20 per cent of his briefs was devoted exclusively to defense of his contract theory and an award may reasonably be computed on that basis. The contract and negligence theories overlap, however, to a degree where we do not believe such a quantitative approach is applicable.

Motions of both parties for rehearing are denied.

HOWARD and HATHAWAY, JJ., concur.

---

4. Allowance of costs depends on the statute in force at the time of accrual of the right to have them taxed. *Hogan v. Ingold,* 38 Cal.2d 802, 243 P.2d 1 (1952). A.R.S. § 12–341.01 applies to contracts in existence before the effective date of the statute. *See Dean Vincent, Inc. v. Chamberlain,* 264 Or. 187, 504 P.2d 722 (1972).