**Terry MARSH, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, a Massachusetts corporation, Defendant.**

**No. CIV 84–1167 PHX CLH.**

United States District Court,
D. Arizona.

July 18, 1988.

Richard S. Cohen, Lewis & Roca, Phoenix, Ariz., for plaintiff.

Ruth V. McGregor, Fennemore Craig, Phoenix, Ariz., for defendant.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Pursuant to 42 U.S.C. § 1988, the plaintiff ("Marsh") has applied for an award of attorney's fees and expenses. Because it prevailed on Marsh's claim for breach of contract, defendant ("Digital") has petitioned for an award of attorney's fees pursuant to A.R.S. § 12–341.01. Marsh's application will be granted; Digital's will be denied.

### DIGITAL'S APPLICATION

■ The operative portion of A.R.S. § 12–341.01 reads:

"In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees."

Digital contends that it is a "successful party" entitled to a fee award even though it was not successful in defending against Marsh's discrimination claim. Digital attempts to draw a distinction between the two claims on the ground that the discrimination claim is governed by federal law while the contract claim is governed by state law. Taken to its logical conclusion, Digital is contending that its fee application should be treated as though Marsh had sued it solely on a contract theory and lost. Such treatment would be proper if the parties had treated the discrimination and contract claims as discrete issues and had kept separate time records relating to each issue. This was not done. Digital contends that an award of attorney's fees for the successful defense of the contract claim should be determined simply by awarding

it half of the total attorney's fees incurred in defending the entire action.

■ Although fees for "distinctly different" unsuccessful claims should not be awarded, a successful civil rights plaintiff should not have his fee award reduced "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). *See also Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App.1983) (party accomplishing result sought by litigation should be awarded fees even for time spent on unsuccessful legal theories); *Circle K Corp. v. Rosenthal*, 118 Ariz. 63, 69, 574 P.2d 856, 859 (App.1977) (contract and negligence claims overlapped to the extent that apportionment of attorney's fees was not practicable).

### MARSH'S APPLICATION

In a civil rights action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

■ "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *see also Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). An application for attorney's fees must be sufficiently detailed to permit the court to make an independent determination of whether the hours claimed are justified. *National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C.Cir.1982). The judge must be able to "make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley*, 461 U.S. at 441, 103 S.Ct. at 1943 (Burger, C.J., concurring). "Where the documentation of hours is inadequate the district court may

reduce the award accodingly." *Id.* at 433, 103 S.Ct. at 1939.

### 1. *Hours Reasonably Expended*

Nine lawyers, three law clerks, six paralegals and nine legal assistants logged 1690.3 hours in the course of representing plaintiff in this action. However, the bulk of the legal work was performed by Mr. Richard S. Cohen (330.3 hours), Ms. Carole Penfield (158.0 hours) and Mr. Steven J. Hulsman (193.0 hours) and the bulk of the paralegal work was performed by Ms. Jean D. Lyman (636.0 hours).

#### (a) *Attorney Time*

■ Ms. Penfield recorded one hour on August 22, 1985, and two hours on August 23, 1985 to "review file." [1] One hour of this time will be disallowed.

Ms. Penfield also attended the trial for three hours on July 27, 1987. Mr. Hulsman replaced her as one of the attorneys responsible for the case about June 4, 1987. Consequently, these three hours will be disallowed.

When Mr. Hulsman became part of plaintiff's litigation team, he spent 1.4 hours in familiarizing himself with the facts and strategy of the case. This time will be disallowed as duplicative. Compensation should not be awarded for duplication of effort. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

On July 31, 1988, after trial and after the case had been submitted to the court for its decision, Mr. Hulsman recorded an hour for "review Marsh testimony in transcript; confer with Mr. D. Danneman re same; telephone call from R. Cohen re same." Why this time was necessary is not apparent. It will be disallowed.

An application for attorney's fees was filed on behalf of plaintiff on September 15, 1987. An amended application was filed the following day. The amended petition contained three additions. Mr. Cohen recorded one hour, Mr. Hulsman 1.6 hours and Ms. Lyman 1.7 hours in preparing the

---

**1.** To "review" appears to be the equivalent of to "read."

amended petition. Mr. Cohen's time will be disallowed as duplicative.

On October 18, 1985 Sueanne Rudley recorded 3.4 hours for "preparation for witness interview with Anna Porter; interview with Anna Porter; interview with Anna Porter and Opal Jones; dictate witness interview notes for file." On October 21 Ms. Rudley recorded 1.4 hours for "dictate witness interview notes for file." On October 22 Ms. Rudley recorded 3.3 hours for "revision of memo detailing interview with Anna Porter; revision of memo re Opal Jones interview; proofread memo re interview with Anna Porter; telephone to potential witnesses; revise memo re Opal Jones interview." In other words, it took Ms. Rudley almost as much time to review her memos relating to the interviews as it did to actually interview the persons and to dictate notes regarding the interviews. A total of 3.3 hours will be disallowed.

A total of 10.7 hours of attorney time will be disallowed.

### (b) Paralegal Time

■ A number of hours recorded by Ms. Lyman must be disallowed. On February 13, 1987, she recorded 6.8 hours for "telephone to Mr. T. Marsh re arrival of Ms. J. Roberts; pickup Ms. J. Roberts at Sky Harbor Airport; dinner with Ms. J. Roberts and Mr. T. Marsh and witness preparation for deposition." Meeting a witness at an airport and taking her to dinner can hardly be considered legal work. There is no way that the court can determine how much of the 6.8 hours was spent in preparing Ms. Roberts for her deposition. It should be noted that on that same date Ms. Penfield spent three hours to prepare for a deposition. All 6.8 hours will be disallowed.

On the following day, February 14, Ms. Lyman recorded 4.6 hours in picking up Ms. Roberts for her deposition and attending the deposition. Of course, Ms. Penfield took Ms. Roberts' deposition. The 4.6 hours will be disallowed.

On February 16, Ms. Lyman recorded a half hour to "pick up receipts from Roadway Inn concerning hotel accommodations of Ms. J. Roberts." Again, this is not legal work and the time will be disallowed.

On July 31, 1987, after trial and after the case had been submitted to the court for its decision, Ms. Lyman recorded half an hour for "confer with court reporter re trial transcript; review transcript of Marsh's testimony." This time will be disallowed.

On September 17, 18 and 20, Ms. Lyman recorded 12.2 hours for a number of items including "legal research re sexual harassment issues." The necessity of this research after trial escapes the court. Since Ms. Lyman did not specify how much time was spent on that research, all of the 12.2 hours will be disallowed.

On August 17, 1987, after the court had handed down its decision, Ms. Lyman recorded 2.1 hours for "confer with court personnel re decision." The necessity for this conference to prosecute Mr. Marsh's claim is not apparent.

After trial, Ms. Lyman had five time entries totaling 4.9 hours for "file administration." Nothing about "file administration" suggests legal work. The time will be disallowed.

Ms. Lyman also had five time entries totaling nine-tenths of an hour between January 25 and February 16, 1988, relating to making appointments with Mr. Marsh. These will be disallowed.

On October 21, 22 and 23, Mary A. Reuther, whom the court assumes to be a paralegal, recorded a total of 2.7 hours regarding an analysis of medical records. It appears that she was directed to do the work by Ms. Lyman. However, there are no time records for Ms. Lyman that appear to relate to any medical records analysis. The court infers that Ms. Reuther billed the time to the wrong case.

A total of 35.2 hours of paralegal time is disallowed.

### (c) Legal Assistant Time

■ Legal assistants recorded a total of 254.9 hours. Much of this time was for work of a clerical nature—11.2 hours for making photocopies, 2.5 hours for copying, binding and cross checking answers to in-

terrogatories, 3 hours for typing indices, 1 hour for tabulating and placing documents on file backers, 2.5 hours for proofreading and updating lists, and 1 hour for locating and copying addresses.

On February 6, 1985, a legal assistant spent 5 hours for "prepare chronological index to documents and cast of characters" and on February 7 she spent 3.5 hours for "prepare chronology of documents; review exhibit list, prepare cast of characters, organize and index Marsh notes." Previously, between January 17 and 29 she had recorded 6.1 hours for "summary of hearing transcript; organize and list exhibits;" "organize, book and index exhibits;" "review hearing transcript summary and exhibit list;" "review hearing digest and exhibit list; review file for missing exhibits." Eight hours will be disallowed.

Between January 8 and June 6, 1986, another legal assistant had twelve time entries totaling 4.9 hours for "updating file." It may reasonably be inferred that, in reality, the legal assistant was acting as a file clerk.

Another legal assistant recorded 13.7 hours for indexing a 76–page deposition. Ten of these hours will be disallowed.[2]

Some of the work performed by legal assistants appears to be duplicative. In late 1984 amd early 1985 two legal assistants recorded 20.1 hours in organizing files and list and indexing exhibits. In December another legal assistant spent 19.9 hours performing what appears to be essentially the same task. The 19.9 hours will be disallowed.

A total of 64.0 hours of legal assistant time will be disallowed.

#### (d) *Total Time Disallowed*

The time disallowed totals 109.9 hours. Deducting these hours from the 1690.3 hours logged results in 1588.3 hours that were reasonably expended in prosecuting the case.

#### 2. *Reasonable Hourly Rates*

No issue has been raised as to the reasonableness of the hourly rates for the various lawyers, law clerks, paralegals and legal assistants. Digital does object to an award being made on the basis of current billing rates. Digital suggests that if an adjustment for delay is appropriate, interest should be awarded on the basis of ongoing billing rates. "[A]warding compensation at current rates will roughly approximate periodic compensation adjusted for inflation and interest and will obviate the necessity of guessing when periodic billings would have been made and paid in an analogous private practice situation." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983). *See also White v. City of Richmond*, 559 F.Supp. 127 (N.D.Cal.1982), *aff'd* 713 F.2d 458 (9th Cir.1983).

#### 3. *The Lodestar*

■ Multiplying the hours reasonably spent on a case by the reasonable hourly rates of compensation produces the "lodestar." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262, n. 5 (9th Cir.1987). The lodestar figure is presumed to be the reasonable fee. *Blum* 465 U.S. at 897, 104 S.Ct. at 1548. The lodestar in this case is $140,372.00.

#### 4. *Adjustment of the Lodestar*

Marsh contends that the lodestar fee should be adjusted upward. Digital contends it should be adjusted downward. No adjustment will be made.

In *Hensley*, the Supreme Court recognized that upward adjustment may be justified "in some cases of exceptional success," 461 U.S. at 435, 103 S.Ct. at 1940. In *Blum* the court held that an upward adjustment may be justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" 465 U.S. at 899, 104 S.Ct.

---

**2.** Marsh's counsel called this to the court's atten- tion.

at 1549. However, by definition, the lodestar is based upon the quality of representation. Nor was this case exceptional. It was risky, but not exceptionally so. Marsh was successful, but not exceptionally so.

 Before an upward adjustment of the lodestar can be made, there must be evidence that without risk-enhancement, the plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market. *Pennsylvania v. Delaware Valley Citizens' Council,* —— U.S. ——, 107 S.Ct. 3078, 3087, 97 L.Ed.2d 585 (1987). Marsh had complained to the Equal Employment Opportunity Commission that he had been discharged because of his race, and he had applied to the Arizona Department of Economic Security for unemployment benefits. Both agencies ruled against him. He presented the affidavits of two lawyers who are well known as employment discrimination law practitioners and who averred that given the adverse rulings by these two agencies, they would not have agreed to represent Marsh on a contingency basis. The affidavit of another lawyer, whose virtually entire practice has been devoted to employment law, averred that her firm turns down at least 20 persons a week seeking representation in employment-related matters and that the firm rarely accepts plaintiffs' cases on a contingent fee basis. However, there is no evidence that Marsh attempted without success to obtain legal representation on a contingent fee basis. His agreement with his attorneys in this case is not a "contingent fee contract" as that term is commonly understood.

Marsh's agreement with his attorneys was that he would pay a retainer of $5,000, which would be the only fee if he recovered nothing; that in the event of recovery, his lawyers would be entitled to one-third of the amount recovered; and that if the court ordered Digital to pay attorney's fees, the law firm would be entitled to a portion of the principal amount recovered by Marsh only if the attorney's fees awarded were less than one-third of the principal amount. Additionally, Marsh was responsible for the payment of all out-of-pocket expenses and costs of litigation. There is no showing that other lawyers would not have agreed to take his case on a similar basis.

Digital contends that the lodestar should be adjusted downward because Marsh did not prevail on the breach of contract and wrongful discharge claims. As discussed above, a successful civil rights plaintiff should not have his fee award reduced because he failed to prevail on every contention raised in the lawsuit.

### 5. Award of Costs and Expenses

As the prevailing party, Marsh is entitled to recover his costs, 28 U.S.C. § 1920. Marsh's taxable costs consist of the following:

| | |
|---|---|
| Filing fee | $ 60.00 |
| Service Fees | 529.10 |
| Certified Copies | 6.00 |
| Court Reporter Fees | 1,069.20 |
| Witness Fees | 60.00 |
| TOTAL | $1,724.30 |

 Marsh also seeks an award of $3,645.09 for out-of-pocket expenses. The statutory authority to award "a reasonable attorney's fee" includes the authority to award reasonable out-of-pocket expenses incurred by the attorney that are normally charged to the client in the course of providing legal services. *See Thornberry v. Delta Airlines, Inc.,* 676 F.2d 1240, 1244–45 (9th Cir.1982), *vacated and remanded on other grounds,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311 (1984). Such expenses must have been "reasonable and necessarily incurred in the clients [*sic*] interest." *Cantrell v. Vickers,* 524 F.Supp. 312, 319 (N.D.Miss.1981). Marsh seeks an award of $1,762.75 for photocopying. This amount includes at least $127.35 for making photocopies of documents to give to Marsh, which may be good "PR" but can hardly be considered necessary to the prosecution of the case. With two exceptions, nothing in the time records indicates what other documents were photocopied and the necessity for the photocopies. On May 23, 1985, $11.15 was incurred for photocopying documents in response to a motion to produce. On June 29, 1987, $281.10 was incurred in photocopying documents for in-

sertion into a discovery notebook. Thus, $292.25 will be allowed as photocopying expense.

A total of $210.99 was charged for overtime. There was no showing what contingencies required overtime work or who did the overtime work. Normally, overtime would be considered a part of regular office overhead.

There is a claim of $50.87 for "meals & entertainment by Ms. Lyman" on June 3, 1987. The statement of the claim is sufficient to demonstrate that it is not allowable.

Ms. Jeanette Roberts, a key witness for Marsh, traveled to Phoenix from California on February 13, 1987, for the taking of her deposition. She was met at the airport by Ms. Lyman. That evening Ms. Roberts, Ms. Lyman and Mr. Marsh had dinner together and in the course of the dinner, Ms. Lyman prepared Ms. Roberts for her deposition. It was taken the following day. It was necessary for Ms. Roberts to remain in Phoenix until February 15 before she could return to California. The following expenses are claimed for Ms. Roberts' trip:

Travel Expenses—meals & ent
re Ms. J. Roberts $ 53.10
Travel Expense—expenses for
Ms. J. Roberts 2–13/15–87
re Ms. Lyman 142.10
Travel Expenses—reimbursement of witness' air fare,
mileage and parking 210.00
Travel Expense—flowers for
Ms. Roberts depo. by Ms.
Lyman 9.96
Travel Expense—meals re Ms.
Roberts' depo. by Ms. Lyman 94.53
Travel Expense—addl. motel
charge by Ms. Lyman re
Ms. J. Roberts 58.16

TOTAL $567.85

The first item is obviously the cost of the meals when Ms. Roberts, Ms. Lyman and Mr. Marsh had dinner together. Only one-third, $17.70 will be allowed. Disallowing the $9.96 for flowers and $94.53 for meals during Ms. Roberts' deposition requires no explanation. Thus, a total of $139.89 will be disallowed.

There are entries for July 17 and 23, 1987, totaling $29.86 for "meeting expense." No explanation has been given as to what is encompassed by a meeting expense.

Marsh will be allowed $1,742.98 as out-of-pocket expenses.

### ORDERS

IT IS ORDERED that the formal written judgment include an award of reasonable attorney's fees in the sum of $140,372.00, taxable costs in the sum of $1,724.30 and reasonable out-of-pocket expenses in the sum of $1,742.98.

IT IS FURTHER ORDERED overruling Digital's objections to plaintiff's proposed form of judgment.

IT IS FURTHER ORDERED that judgment be and it is hereby signed, settled and approved.